UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Shanasha Whitson,                                    File No. 19-cv-03165 (ECT/DTS)

      Plaintiff,

v.

The Minnesota Department of Health,                  **OPINION AND ORDER**
Infectious Disease Epidemiology Prevention
and Control Division, HIV/STD, TB Unit;
Christine Jones; Jessica Barry; Peggy
Darrett-Brewer; and Amy Yolanda Castillo,

      Defendants,

---

*Pro se* Plaintiff Shanasha Whitson is the Executive Director of Community Partnership Collaborative 2.0 ("CPC"), a non-profit organization through which she performs HIV-related community service and outreach.  In 2018, Whitson and CPC entered into a grant agreement with the Minnesota Department of Health.  Whitson and CPC[1] filed this lawsuit in federal court against the Department and four of its employees seeking damages from the grant agreement's termination.  Compl. ¶ 16 [ECF No. 1].  Defendants have moved to dismiss Whitson's suit on several grounds, including for lack of subject-matter jurisdiction.  Mot. to Dismiss [ECF. No. 23]; Mem. in Supp. at 8–17 [ECF No. 26]. Because Whitson's complaint and submissions cannot reasonably be understood to plead a federal claim, Defendants' motion will be granted.

---

[1]    On the recommendation of Magistrate Judge David T. Schultz, and without objection, CPC was dismissed from this lawsuit without prejudice after Whitson elected to proceed *pro se*.  *See* Order Accepting Report and Recommendation [ECF No. 7].

I[2]

CPC is a nonprofit entity devoted to HIV prevention and awareness. Through CPC, Whitson operated a program called "Testing and Tea for HIV." Compl. ¶ 18. For vulnerable women in the community, CPC and its programming served as a "conduit to services and education" that included HIV testing, supplies, and other health services. *Id.* In February 2018, CPC and Whitson entered into a grant agreement with the Department of Health to provide HIV testing and community outreach. Under the grant agreement, CPC would be paid up to $50,000 per year to conduct HIV-prevention programming through December 31, 2022. Compl. ¶ 17; *see also* Kimble Decl. Ex. 1 at 3 [ECF No. 27-1].

On November 20, 2018, Whitson presented to an audience of "about 75-100" Department of Health staff about Testing and Tea for HIV. Compl. ¶ 8. After the presentation, Whitson answered audience questions. *Id.* During one answer, Whitson

---

[2] The facts are taken from Whitson's complaint and documents referenced in the complaint and attached as exhibits to the declaration of Defendants' counsel, Janine Kimble. Though Rule 12 review generally is confined to the facts alleged in a complaint, courts may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003) (quoting *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996)). Here, Kimble's declaration includes four documents: (1) the grant agreement [ECF No. 27-1]; an amendment to the grant agreement [ECF No. 27-2]; (3) the grant termination letter [ECF No. 27-3]; and (4) a December 20, 2018 email sent to Whitson by Defendant Christine Jones [ECF No. 27-4]. These documents are referenced throughout Whitson's complaint. *See* Compl. ¶¶ 9, 14, 16, 17. Neither party has challenged the authenticity of the exhibits. Rather, Whitson cites the grant agreement for support in her Rule 12 response. *See* Mem. in Opp'n ¶ 2 [ECF No. 30]. Therefore, these exhibits are properly considered in reviewing Defendants' motion to dismiss.

identified—evidently by name—a man and woman with whom she had worked for over a decade. *Id.* Whitson disclosed that the man was HIV positive. *Id.* She also commented that he had been "open and out about his HIV status since 2008." *Id.* The Department did not communicate any concerns about Whitson's comments during or immediately after her presentation. *Id.* ¶ 14. Nor did the Department contact Whitson to discuss whether she had permission to share this information. *Id.* ¶ 17. If asked, Whitson would have informed the Department that she had obtained "signed releases." *Id.* ¶ 10.

On December 20, 2018, Defendant Christine Jones e-mailed Whitson to notify her that the Department had terminated the grant agreement effective December 17, 2018. *Id.* ¶ 9; Kimble Decl. Ex. 4 [ECF No. 27-4]. A grant-termination letter dated December 14, 2018, was attached to the email. Compl. ¶ 9; *see* Kimble Decl. Ex. 3 [ECF No. 27-3]. Jones claimed the letter had been mailed to CPC on December 14, 2018, though Whitson apparently had not received it. Compl. ¶ 9; Kimble Decl. Ex. 4. According to the letter, the Department terminated the grant agreement because it determined that Whitson had violated a term of the agreement governing the disclosure of protected data. The Department cited Section 10 of the agreement, which provided in relevant part:

> Pursuant to Minnesota Statutes Chapter 13.05, Subd. 11(a), the Grantee and the State must comply with the Minnesota Government Data Practices Act as it applies to all data provided by the State under this agreement, and as it applies to all data created, collected, received, stored, used, maintained, or disseminated by the Grantee under this agreement. The civil remedies of Minnesota Statutes section 13.08 apply to the release of the data referred to in this clause by either the Grantee or the State.
>
> If the Grantee receives a request to release the data referred to in this clause, the Grantee must immediately notify the State.

3

> The State will give the Grantee instructions concerning the release of the data to the requesting party before any data is released. The Grantee's response to the request must comply with the applicable law.

Kimble Decl. Ex. 1 at 5. In its termination letter, the Department wrote that Whitson had violated this term during her November 20, 2018 presentation by: (1) releasing identifying information about an HIV patient; and (2) "assigning a code word for those who had a positive HIV test" to another person working at the event. Compl. ¶ 9; Kimble Decl. Ex. 3 at 1–2.

After learning of the Department's decision to terminate the grant agreement, Whitson reached out to at least two of the individual Defendants to discuss the decision. Whitson contacted Peggy Darrett-Brewer to explain that the man Whitson identified during the presentation was open about his HIV diagnosis. Compl. ¶ 13. Darrett-Brewer responded that Whitson "should have made sure [the Department] knew [Whitson] had a release of information." *Id.* Whitson also called Christine Jones to discuss the termination decision. Jones stated that "people from the section came to her with concerns" after the presentation. *Id.* ¶ 12. Whitson asked why Jones had terminated the grant agreement without offering her "technical assistance." *Id.* Jones stated, "I was going to offer you technical assistance and then decided not to." *Id.* Jones responded further that the Department had investigated and that, having discussed the termination with the Department's legal counsel, the decision to terminate the grant agreement was final. *Id.* Later, Whitson received an errant email from Defendant Jessica Barry "offering technical assistance" to another private entity. *Id.* ¶ 18.

4

Whitson alleges to have suffered damages caused by Defendants' actions. She was deprived of the remaining grant dollars for which she was eligible under the grant agreement through December 31, 2022. Compl. ¶ 17; Kimble Decl. Ex. 1 at 3. CPC was not reimbursed for gift cards and testing supplies it purchased and distributed to community members for participating in Testing and Tea for HIV. Compl. ¶ 15. Whitson has suffered reputational harm in the "community and with the philanthropic community." *Id.* ¶ 17. In many cases, community members were counting on Whitson's services—services she is no longer able to provide. *Id.* ¶ 18. Finally, the termination decision has hindered Whitson's ability to apply for other grants. *Id.* ¶ 17. Whitson now must disclose and attempt to explain the prior grant termination due to a "breach of confidentiality" in her grant applications. *Id.* Whitson alleges that an infraction of this nature is an "instant/sudden death" for grant applications. *Id.* Whitson seeks $10 million in damages. *Id.* at 9.

II

In reviewing a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a court must first determine whether the movant is making a "facial" or "factual" attack. *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914 (8th Cir. 2015). Here, Defendants mount a facial attack to subject-matter jurisdiction because they accept as true all of Whitson's factual allegations concerning jurisdiction. *See* Mem. in Supp. at 9–11; Reply Mem. in Supp. at 1–4 [ECF. No. 33]. In analyzing a facial attack, a court "restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought

under Rule 12(b)(6)." *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations omitted). Whitson seeks to establish federal-question jurisdiction under 28 U.S.C. § 1331. Compl. ¶ 3; Mem. in. Opp'n ¶ 1 [ECF No. 30]. (She does not—and, it seems, could not—invoke diversity jurisdiction under § 1332. Whitson's complaint and submissions give no reason to think that she is a citizen of a state other than Minnesota.) Subject-matter jurisdiction under § 1331 exists if a plaintiff's properly pleaded complaint presents a substantial federal question. *Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519, 521 (8th Cir. 2020). A federal question may be established two ways. A federal question is readily established when federal law creates a cause of action asserted in the complaint. In other rare cases, a state-created cause of action may arise under federal law if a plaintiff's right to relief necessarily depends on resolving a substantial question of federal law that may be addressed in federal court without disrupting the federal-state balance approved by Congress. *Gunn v. Minton*, 568 U.S. 251, 257–58 (2013).

Though allegations made in a *pro se* complaint are liberally construed, *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004), Whitson's complaint identifies no claim arising under federal law. At various points, Whitson seeks damages for libel, defamation, and slander. Compl. ¶¶ 16, 17. Whitson also alleges that the Department was negligent, *id.* ¶ 17, and the complaint fairly may be construed to allege breach of contract, *id.* ¶¶ 15, 16. These claims arise under state law. *E.g.*, *Nelson Auto Ctr, Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 956 (8th Cir. 2020); *Iowa Mgmt. & Consultants, Inc. v. Sac & Fox Tribe of Mississippi in Iowa*, 207 F.3d 488, 489 (8th Cir. 2000). The complaint hints at the possibility of federally created claims, but these references are quite vague. For example,

6

Whitson asks: "Where in the . . . federal statutes is it a violation to use a code word with a HIV patients [sic] consent?"  Compl. ¶ 11.  Whitson also asks: "[W]hy wasn't [CPC] offered technical assistance?  Is it because I am an African American, black women owned business, is it because CPC 2.0 is small and caters to this population at highest risk for HIV?"  *Id.* ¶ 18.  Questions like these usually are not enough to plead claims.  Whitson's complaint includes other passages that may be understood to allude to federal law.  She alleges, for example, that "[a]ccording to the treaties and constitution services to this disproportionately impacted community at highest risk for HIV should not be terminated."  *Id.*  These references only suggest the possible applicability of some federal law and would require a guess as to what federal claim, if any, Whitson intends to assert.  Even construed liberally, a complaint that asks questions and alludes in the broadest possible terms to federal law does not plead a claim arising under federal law.

Whitson's Rule 12 response includes additional allegations hinting at possible federal claims.  Whitson cites to the Fourteenth Amendment's Equal Protection Clause, Mem. in Opp'n ¶ 1, and states that she "think[s]" the grant agreement was terminated "because it was testing Black and African women" and that the grant funds were "not rerouted to another black owned or operated organization testing Black or African women for HIV," *id.* ¶ 4.  According to Whitson, the Department "for the past 30 years has aided in the health disparities of Black women, men and children using tactics like these to wrongfully terminate programs or not fund them at all as evidenced by the amount of Black and African agencies that have received funds from MDH compared to the disparities that inflict the community with HIV/AIDS."  *Id.*  Whitson alleges that the money administered

7

by the Department under the grant agreement is "federal funding" and "therefore the state must abide by federal contractual rules, statues [sic] and regulations." *Id.* ¶ 1. Whitson contends Defendants' actions "could be considered federal level fraud if someone in charge knew of the false representation." *Id.* ¶ 4.

These allegations do not justify the conclusion that there is subject-matter jurisdiction over this case. A plaintiff may not amend her complaint by introducing new allegations in a memorandum in opposition to a motion to dismiss. *Morgan Distrib. Co. v. Unidynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989); *see also* Fed. R. Civ. P. 15. If properly considered as part of her complaint, Whitson's allegations would not plead a federal claim for the same reasons the allegations in her complaint do not. Whitson identifies no federal basis for her fraud claim, and ordinarily that is a state-law claim. Though Whitson alludes to race discrimination and federal law generally, she does not identify a federal cause of action with enough clarity to eliminate the need for guessing. There are just too many possibilities. Whitson's assertion that the grant agreement included conditions imposed by federal law does not raise a substantial federal question that might trigger § 1331 jurisdiction over her state-law claims. *See*, *e.g.*, *Martinson v. Mahube-Otwa Cmty. Action P'ship, Inc.*, 371 F. Supp. 3d 568, 574–78 (D. Minn. 2019) (holding that allegations of noncompliance with federal regulation by federally-funded defendant did not establish subject-matter jurisdiction over state law claim).

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendants' Motion to Dismiss [ECF No. 23] is **GRANTED** for lack of subject-matter jurisdiction;

2. Plaintiff's Motion to Deny Defendants' Motion to Dismiss and Grant Plaintiff's Motion to be Granted Relief [ECF No. 30] is **DENIED**; and

3. This action is **DISMISSED** without prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  August 25, 2020              s/ Eric C. Tostrud
                                     Eric C. Tostrud
                                     United States District Court